# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| LARRY DAML and BRENDA DAML, | Civil No. 07-4384 (JRT/FLN) |
| Plaintiffs, | |
| v. | |
| KEVIN MEYERS, KENNETH MEYERS, TOTAL TITLE LLC, INVESTCO, INC., | **ORDER ADOPTING THE REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE** |
| Defendants, | |
| and | |
| FEDERAL HOME LOAN MORTGAGE CORPORATION, | |
| Intervenor. | |

Nicholas P. Slade, **BARRY & SLADE, LLC**, 2021 Hennepin Avenue, Suite 195, Minneapolis, MN 55413, for plaintiffs.

Bradley N. Beisel and Michael E. Kreun, **BEISEL & DUNLEVY, PA**, 730 Second Avenue South, Suite 282, Minneapolis, MN 55402, for intervenor.

This case is before the Court on plaintiffs Larry and Brenda Daml's objections to a Report and Recommendation ("R&R") issued by United States Magistrate Franklin L. Noel on December 22, 2010. The Magistrate Judge recommended granting intervenor defendant Federal Home Loan Mortgage Corporation's ("Freddie Mac") motion for summary judgment. The Court has conducted a *de novo* review of the Damls' objections pursuant to 28 U.S.C. § 636(b)(1)(C) and Local Rule 72.2(b). Because the Damls point

to no facts triggering a duty of inquiry on the part of the original mortgagee, GN Mortgage, LLC ("GN"), the Court finds that GN is a bona fide purchaser of the property. As a result, Freddie Mac benefits from the bona fide purchaser filter rule. Therefore, the Court overrules the Damls' objections, adopts the R&R, and grants Freddie Mac's motion for summary judgment.

## BACKGROUND

In 2005, facing foreclosure on their Anoka, Minnesota home, the Damls agreed to a plan whereby they would transfer title to Kenneth Meyers, who would lease the property back to the Damls with an option to purchase. (Compl. ¶¶ 10, 29-30, Docket No. 1.)[1] In March 2005, the Damls and Meyers signed a Residential Lease Agreement with an option to purchase. (*Id.*, Ex. Q.). This conveyance was never recorded. (*Id.* ¶ 20.) At the November 15, 2005 closing, the Damls signed a warranty deed conveying the property to Meyers which was subsequently recorded in Anoka County on December 13, 2005. (Aff. of Michael Kreun, Sept. 8, 2010, Ex. K, Docket No. 72.)

At the closing, Meyers gave a purchase money mortgage for $296,000 to Mortgage Electronic Registration Systems, Inc. ("MERS"), serving as nominee for GN Mortgage, LLC ("GN"). (Kreun Aff., Ex. M., Docket No. 72.) Attached to the mortgage was a Family Rider, indicating Meyer's intent to rent out the property, although it made no mention of to whom he planned to rent. (*Id.*) The mortgage was recorded in Anoka County on the same date as the warranty deed. (*Id.*) On February 27, 2006, the loan

---

[1] The complaint alleges facts specific to each defendant, however, the Court has repeated the facts only to the extent necessary to address the motion before it.

secured by the mortgage was assigned to Freddie Mac.  (Aff. of Joseph A. Moschetto Sr. ¶ 3, Sept. 8, 2010, Docket No. 71.)

Subsequently, Meyers defaulted on the mortgage, and it was foreclosed.  (Kreun Aff. Ex. W, Docket No. 72.)  MERS purchased the property at the resultant sheriff's sale, subject to a six-month redemption period (*id.*, Ex. X), and became the record title holder on September 17, 2007 after that redemption period expired.  (*Id.* ¶ 29.)  MERS then conveyed the property to Freddie Mac with a limited warranty deed, which was recorded in Anoka County on October 30, 2007.  (*Id.*, Ex. Y.)  Freddie Mac alleges that it had no knowledge of plaintiffs' unrecorded claim or ownership interest in the property at the time of its purchase of the mortgage in 2006, or when it took record title to the property from MERS in 2007.  (Moschetto Aff. ¶¶ 5-6, Docket No. 71.)

The Damls filed the instant complaint alleging violations of state and federal laws protecting foreclosed homeowners, and claiming a right of rescission because the transaction with Meyers was an equitable mortgage.  (Compl. ¶¶ 81-171, Docket No. 1.)  The Court granted default judgment against defendants, but permitted Freddie Mac to intervene.  (Docket Nos. 28, 27.)  The Court then granted Freddie Mac's motion to vacate the judgment to allow Freddie Mac to fully defend against plaintiffs' claims.  (Docket No. 42.)

Freddie Mac moved for summary judgment, asserting it was a bona fide purchaser for value without knowledge of the alleged agreement between the Damls and Meyers, and therefore, the fee simple owner of the property.  (Docket No. 68.)  The Magistrate Judge recommended granting the motion.  (Docket No. 84.)  Plaintiffs object to the R&R,

arguing that neither GN nor Freddie Mac were good faith purchasers, and that Freddie Mac is not entitled to protection under the bona fide purchaser filter rule. (Docket No. 85.)

## ANALYSIS

### I. STANDARD OF REVIEW

Summary judgment is appropriate where there are no genuine issues of material fact and the moving party can demonstrate that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A fact is material if it might affect the outcome of the suit, and a dispute is genuine if the evidence is such that it could lead a reasonable jury to return a verdict for either party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A court considering a motion for summary judgment must view the facts in the light most favorable to the non-moving party and give that party the benefit of all reasonable inferences that can be drawn from those facts. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### II. FORECLOSURE RECONVEYANCE STATUTE

The Damls argue that the transaction with Meyers was an equitable mortgage and that the deed was meant only as security for a loan, not as a transfer of title. (Compl. ¶¶ 58-63, Docket No. 1.) Minnesota courts adopted the doctrine of equitable mortgage "to prevent any overreaching by one party which would unfairly exploit the other party's financial position or relative lack of experience in real estate dealings." *Ministers Life & Cas. Union v. Franklin Park Towers Corp.*, 239 N.W.2d 207, 210 (Minn. 1976). The

Damls, therefore, argue the transaction is protected by Minnesota's foreclosure reconveyance statutes, irrespective of Minnesota's Recording Act. *Compare* Minn. Stat. § 325N.10-18, *with* Minn. Stat. § 507.34.

The prohibited practices of the reconveyance statutes, however, only apply to a foreclosure purchaser. A foreclosure purchaser is defined as "the **acquirer** in a foreclosure reconveyance" or "a person that has **acted in joint venture** or joint enterprise with one or more acquirers in a foreclosure reconveyance." Minn. Stat. § 325N.10, subd. 4 (emphasis added). GN was not the acquirer in the transaction, and the elements for status as a joint venture have been neither alleged nor shown as material facts in dispute. *See Knapp v. Vandergon*, No. 08-1284, 2009 WL 1616668, at *5 (D. Minn. June 5, 2009) ("The elements of a joint venture [under § 325N.10] are: (1) contribution by all parties; (2) joint proprietorship and control; (3) sharing of profits but not necessarily losses; and (4) a contract. The elements of a joint enterprise are: (1) a mutual understanding for a common purpose; and (2) a right to a voice in the direction and control of the means used to carry out the common purpose." (citations omitted)). Therefore, the Court agrees with the Magistrate Judge that the foreclosure reconveyance statutes are unavailing.

## III.    GN WAS A BONA FIDE PURCHASER

The Damls next argue the Magistrate Judge erred in the determination that GN was a bona fide purchaser. Under the Minnesota Recording Act, an unrecorded conveyance is "void as against any subsequent purchaser in good faith and for a valuable

consideration of the same real estate, or any part thereof . . . ." Minn. Stat. § 507.34. A purchaser is therefore bona fide if he or she provides valuable consideration for the property and lacks **actual**, **constructive**, or **implied** notice of others' inconsistent outstanding property rights. *Miller v. Hennen*, 438 N.W.2d 366, 369 (Minn. 1989). Mortgagees are considered purchasers under the Recording Act. Minn. Stat. § 507.01.

The Damls do not argue that GN had actual knowledge of their property interest, although they object to the sufficiency of the affidavit of Samantha Steinle which establishes that GN had neither actual nor constructive knowledge of the Damls' interest. The substance of the Daml's objections to the R&R lies in whether GN had **implied** notice of their interest; actual and constructive notice are not in dispute.[2] Therefore, the Court declines to address the sufficiency of the affidavit.

The disposition of this case, therefore, turns on whether GN had implied knowledge of the Damls' property interest. Minnesota courts have found implied notice when purchasers have "actual knowledge of facts which would put one on further inquiry." *Miller*, 438 N.W. 2d at 370 (quoting *Anderson*, 263 N.W.2d at 384-85). Occupancy of property by someone other than the record title holder serves as implied notice of the occupant's possible interest in the property. *Claflin v. Commercial State Bank of Two Harbors*, 487 N.W.2d 242, 248 (Minn. Ct. App. 1992). However, if the possession of property is consistent with the title of record, such possession does not

---

[2] Constructive notice "as a matter of law . . . imputes notice to all purchasers of any properly recorded instrument even though the purchaser ha[d] no actual notice of the record." *Anderson v. Graham Inv. Co.*, 263 N.W.2d 382, 384 (Minn. 1978) (emphasis added). Because the Damls' lease was not recorded, GN could not have constructive notice of the Damls' property interest.

necessarily constitute implied knowledge.  *Olson v. Olson*, 281 N.W. 367, 368-69 (Minn. 1938).

Here, the Damls remained as occupants of the home and their possession was, at all **relevant** times, consistent with the title of record.  The conveyance between the Damls and Meyers, and the mortgage between Meyers and GN, were executed at the same closing.  The Damls argue that because there was a brief lapse between the execution of the warranty deed to Meyers and the execution of the mortgage between Meyers and GN, irrespective of the fact that the brief moment of time occurred in the midst of a closing, GN had a duty of inquiry.  However, this brief period of possession does not constitute the type of facts that trigger a duty to inquire.  *See Olson*, 281 N.W. at 368 (noting that "continued possession by a grantor 'for a not unreasonable time' after his conveyance . . . is not . . . notice" in case where the seller stayed on the property for eleven days).  Further, as the deed and mortgage had not yet been recorded, the Damls' possession in the brief time between the execution of the warranty deed to Meyers and the execution of the mortgage was not inconsistent with the record title.  Essentially, the Damls' argue that since for a brief period of time amidst the closing Meyers held legal title while the Damls had possession, GN had inquiry notice of their property interest. However, even if GN had done a title search at that time, no inconsistency would have been apparent since the deed was not recorded until December and the lease was never recorded.  Further, unlike the situation in *Knapp*, where the contract for deed – deemed an equitable mortgage – was signed in the presence of the mortgagee, here the lease was signed by Meyers and the Damls six months before the closing.  *See* 2009 WL 1616668,

at *5. Because of the consistency between the Damls' occupancy of the property and the record title when GN would have approved the mortgage (prior to the closing), and the small amount of time involved, the Court finds that GN was not on implied notice of the Damls' retained property interest by virtue of their continued occupancy at the time of the closing.[3]

The Damls argue the Family Rider addendum to the mortgage was sufficient to put GN on implied notice of the Damls' property interest. The Family Rider, though designating that Meyers would rent out the property, does not specify to whom. Accordingly, the Court agrees with the Magistrate Judge that GN did not have implied knowledge that the Damls remained in possession of the property based on the Family Rider, and thus, had no duty to investigate.

Finally, the Damls argue GN's general knowledge of the existence of equity stripping schemes constitutes actual knowledge of facts which would put one on further inquiry. However, GN's general knowledge of the existence of foreclosure equity schemes cannot put it on implied notice of the Damls' retained property interest in this specific case. One court has noted that "mere rumors [and] vague statements . . . do no more than arouse suspicion or create speculation" and are not sufficient to impute implied notice. *Exxon Corp. v. Raetzer*, 533 S.W.2d 842, 846 (Tex. App. 1976). The Court does not find that a duty of inquiry based on general knowledge of these schemes is

---

[3] The Damls argue that under *Ripley v. Peel*, 700 N.W. 2d 540 (Minn. App. 2005), GN should be held to an elevated duty of inquiry based on its status as a sophisticated lender. In *Ripley*, however, a professional lender neglected to perform a title search **before** securing an additional mortgage. *Id.* at 547. Here, GN performed secured a title search before closing. Accordingly, *Ripley* is inapposite.

appropriate, since it would place a heavy burden on mortgagees in every foreclosure proceeding.

Accordingly, the Court finds that plaintiffs have failed to demonstrate sufficient facts upon which a jury could find that GN Mortgage had implied notice of the Damls' unrecorded interest in the property. As a result, the Court finds that GN was a bona fide purchaser.

## IV. FREDDIE MAC'S SUBSEQUENT PURCHASE

In Minnesota, "a bona fide purchaser of property which was subject to a prior outstanding unrecorded interest may pass title free of the unrecorded interest to a subsequent purchaser who otherwise would not qualify as a bona fide purchaser under the recording act." *Chergosky v. Crosstown Bell, Inc.*, 463 N.W.2d 522, 524 (Minn. 1990). Without this bona fide purchaser filter rule, the purchaser "would be deprived of the full benefit of the purchase – the right to transfer good title to a subsequent purchaser." *Id.* The Damls argue that the bona fide purchaser filter rule is inapplicable, as GN was not a bona fide purchaser. As discussed above, GN is a bona fide purchaser and therefore had the right to transfer the title to Freddie Mac, irrespective of whether Freddie Mac would qualify as a bona fide purchaser. Therefore, Freddie Mac is entitled to summary judgment on its assertion that it is the fee simple owner of the property. The Damls' remaining claims against Kevin Meyers, Kenneth Meyers, Total Title, LLC, and Invesco, Inc. are not affected by this Order.

**ORDER**

Based on the foregoing and all the files, records and proceedings herein, the court **OVERRULES** plaintiffs' objections [Docket No. 85] and **ADOPTS** the Report and Recommendation of the Magistrate Judge dated December 22, 2010. [Docket No. 84.] Therefore, **IT IS HEREBY ORDERED** that Federal Home Loan Mortgage Corporation's Motion for Summary Judgment [Docket No. 68] is **GRANTED**.

DATED: August 15, 2011            s/ John R. Tunheim
at Minneapolis, Minnesota.            JOHN R. TUNHEIM
                                               United States District Judge